Kirkpatrick, O. J.
There is no question at all that in this state we can proceed only upon the presentment of the grand jury.*
The prisoner having pleaded not guilty on Wednesday, it was proposed by the defendant’s counsel to waive the right to a copy of the indictment'two entire days before the trial, to (which the prisoner was entitled by the statute) and to have the cause set down for Friday.
Kirkpatrick, C. J.
Where the indictment is for murder, we do not allow the counsel to waive the right to a copy (two entire days previous to the trial), but where it is only for manslaughter they may do it.
* Sloan said, they were willing to waive the two days, and have the cause set down for Friday, which was accordingly done.
On Friday morning the prisoner was placed at the bar, and his trial commenced. In calling the jury, the name of *297 one of the jurors called was, by mistake, omitted in the copy of the panel delivered to the prisoner, whereupon Neal, in behalf of the prisoner, objected to the jurors being sworn.
JO. H. Stockton, for the defendant,
objected, that upon an indictment for manslaughter no declarations of the prisoner which went to shew malice, could be given in evidence, because they would prove him guily of a higher offence than that laid in the indictment.
W. Halsted, contra, said
1. That the objection was too soon ; the gentleman should wait till an improper question was asked, and then make his objection. 2. He admitted that declarations which were made before or after the transaction could not be given in evidence for the purpose of proving malice; but he said that declarations uttered at the time of the transaction, or so near it that they might be considered a part of the res gestee, might be given in evidence on this indictment.
Kirkpatrick, O. J., said, pass him by, and call the jurors according to the list delivered the prisoner.
After the jury were sworn,
Sims opened the prosecution, and in the course of his opening observed, that he should prove declarations of the prisoner which would clearly shew that the act was done wilfully and maliciously.
Kirkpatrick, C. J. The objection of the counsel is made at this time merely to prevent delay. With a view to prove propensed malice, neither declarations nor circumstances which shew deliberate malice, can be given in evidence on this indictment.
*298 .Elizabeth JEnghard was then sworn and examined on the part of the state. She.said that she was the widow of the deceased; that on the evening her husband .was killed he came home pretty much intoxicated, and had been in the. house but *a few minutes when the prisoner came in and sat down in the corner, and they got into a conversation about what Job had said; Adam told Job that he had heard that Job had said he could whip him ; Job'immediately got up, stripped off his coat, picked up an axe handle, and told Adam if he said that again he would knock him down in his own .house; Adam then picked up another axe handle; witness ran between them and took hold of Adam, and her mother and Job’s wife pushed Job out of the room; Job then threatened he would kill Adam before he went to sleep.
• Stockton objected to the evidence of the threat, because it was a declaration that proved malice. ■
Halsted contended that the evidence was proper, as it was a part of the transaction which took place at the time the act charged in the indictment was committed.
Kirkpatbíck, O. J. . You have now gone so far as to get the parties together and in high words, and certainly what both parties said then is competent.
Examination proceeded. — Job struck at Adam with the axe helve, but missed him; Adam followed Job into the room adjoining the one the deceased occupied (which was a room that was not in the possession or occupation of either Adam or Job, but was reserved to himself by the-landlord of whom-Job and Adam rented their several apartments);. Job still kept threatening and daring Adam.to come on; but Job’s wife pushed Job into his own room, and shut the door; then Adam struck the door with the axe handle and knocked out two of the panels; witness then took the axe *299 handle away from Adam, and Adam told Job that if he had anything against him, to come out and tell him what it was, and that he ought not to threaten him so, after they had made friends at the marl pit; Job replied, God d — n ycfu, I will shew you, and immediately thrust his body through the broken door, and with the axe handle, which he held in both hands, struck Adam a blow on the left side of his head and broke his skull; Adam immediately fell, and while he was lying on the floor, Job came out of his room and turned Adam over, and said
*Stockton objected to the proving anything which Job said after the blow was given.
Kietcpateick, O. J. All words spoken during this transaction may be given in evidence; anything before or after would be improper, but all that was said during the time and after their passions were excited is proper evidence.
The examination proceeded. — Job then said, ah ! God d — n you, have I killed you ! The blow was given on Tuesday,' and Adam died on the Monday following.
Sarah Enghard, the mother of the deceased, was also sworn on the part of the state. She corroborated the testimony of Elizabeth Enghard, as to what took place in Adam's apartment, but she did not see the blow given, for she at that time had run out of the house to get away from the quarrel.
Robert C. Walton, examined on the part of the state, said, that he was one of the jurors on the coroner’s inquest which was holden on the body of the deceased, and that at that time he examined the wound — (witness was about to describe the nature and appearance of it) when
*300 Stockton objected to his detailing any facts or circumstances which had come to his knowledge while he was on the coroner’s jury.
t
W. Halsted, contra, said the evidence was proper. What was proposed to be inquired into, was not what the witnesses had sworn before the coroner’s inquest; this, he admitted, would be improper, because the coroner was required, by the statute, to reduce the evidence given before him to writing, and therefore the inquisition must be resorted to for that purpose. But evidence now offered was merely the knowledge which the juror had derived from his own personal observation and examination while on the jury, and which could not be proved in any other manner than by the juror himself. And if it did not fall within the objection, that it was proving by parol’that of which higher evidence existed in writing, there was no objection to it. The circumstance of the juror having obtained this knowledge "while he was a juror could not prevent its being received in evidence.
*Kiekpatb,ick, O. J.
What the man saw and felt would certainly be good evidence, and whether he was a juror or not at the time he obtained the knowledge, can make no difference.
The witness then described the wound as being an inch and a half in length, and three-quarters of an inch in width, and half an inch or three-quarters in depth, and the skull so much fractured that the brains were visible.
George Haywood, Esq. and Ellis Comfort were also sworn, and testified to nearly the same facts.
Dr. J. Stratton was sworn, and the following questions were asked him by the counsel for the state. Did you see the wound of the deceased ? Answer. No. Did you hear *301 the description given of it by the witnesses on the part of the state ? Answer. Yes. Was it (in your opinion) such a one as would occasion death ?
Stockton objected to this question. — 1. Because it was mere matter of opinion. And 2. If the opinion of a medical man was proper, it ought to be an opinion formed from a personal examination of the subject, and not upon facts detailed by others; and he said that the opinions of physicians upon mere supposititious cases could not be permitted to go to the jury as evidence.
Halsted, contra.
Kibkpatbick, G. J.
said, we have always admitted the opinions of physicians in cases of this kind. It would often be extremely difficult for common men to tell whether a person came to his death by the means charged in the indictment or not, as, for instance, where a man has been poisoned. It is therefore, not only common to ask the opinion of medical men in all cases of this kind, but you may even suppose similar cases, and may ask 'whether such or such a stroke would occasion death.
The examination proceeded, and the doctor stated that fractures of the skull similar to that described by the witnesses on the part of the state, most generally produced death ; although there were many cases mentioned by medical writers where persons had recovered who had received fractures much worse than the one described.
*Dr. Budd was also examined, and confirmed the opinion of Dr. Stratton.
The counsel for the state then rested their cause — and
*302 Sloan opened the defence, which he placed upon two grounds. — 1. That the deceased .was intemperate and subject to fits; and that the death was occasioned by a fit, and not by the blow.
2. That the defendant was justified in striking the deceased, because he did, it in defence of his family and of his house. .
■ Several witnesses were examined upon the part of the defendant, with a view to support these points, and also discredit the wife of the deceased; but their’ testimony did not materially alter that produced on the part of the state.
The cause was then summed up by Sloan and L. Jff. Stockton, for the prisoner, and Sims and W. Halsted, for the state.
^The jury found the prisoner guilty of manslaughter, and the conrt sentenced him to three years’ imprisonment and a fine of $1,000.

 Note — It is said by Colden, mayor, in the case of Robert M. Goodwin, as reported by Counsellor Sampson, (Grim. Rec. 441) “ that in several instances, at least in more than one instance, in the state of New York, persons have been put to answer on the coroner’s inquest.” This observation of the mayor is not to be found in the report of the case by Rogers, 5 City Hall Ree. 14. But if it has been the practice in New York to try a defendant upon the inquisition,-it appears to me to be in direct violation of the article of the constitution. Our statute is equally peremptory upon the justices of Oyer and Terminer to proceed upon ,the inquisition as that of New York : it says, the justices “shall proceed thereupon.” But yet that practice never obtained here since the adoption of the amendments to the constitution.